May it please the Court, Counsel, I'd like to reserve two minutes for any rebuttal I may have. Your Honors, the District Court abused its discretion by dismissing Mr. Clift's FRSA claim and refusing to join the Bankruptcy Trustee as authorized by the Bankruptcy Court to participate in this case. Federal Rule of Civil Procedure 17A3 allows a party a reasonable time after objection for the real party in interest to join the lawsuit. This circuit, in as recent as a decision as last October in Jones v. Las Vegas Metropolitan Police Department reiterated that rule, was designed to, quote, prevent forfeiture of a claim when an honest mistake was made. Okay, so in this particular case you say it's an abuse of discretion? That's correct, Your Honor. So whenever I look at a Rule 17 motion, I don't really have to, if I'm the District Court, give you the benefit of the doubt on the facts, do I? Well, in this case, yes, Your Honor, because it was converted to a summary judgment motion. If, in fact, you make a motion to dismiss under Rule 17, does that necessarily mean it's a summary judgment? No, it doesn't necessarily mean it. What happened was... I guess I'm trying to figure out, it seems to me that if this is really an abuse of discretion, as you suggest, and the District Court looks at all the facts here and decides after looking at all the facts and listening to what's gone on, then at that point I'd have to give that District Court some discretion, wouldn't I? Well, Your Honor... But in this one, the Court explicitly converted the motion to a summary judgment motion. Oh, but just a minute. Let's talk about that. I appreciate that that seems to be what the Court did. My problem is that on ruling on Rule 17 motions for a long time, and you move to dismiss or you do whatever you have to do, given that it's an abuse of discretion, you weigh the facts, you weigh what's going on, and after you weigh it, you come to the decision you did. In this particular case, the Court acts as if it's a summary judgment, but the bottom line is you get more benefit of the doubt on that because he's going to give you the benefit of the doubt on the facts, whereas if he just rules on Rule 17, you lose. So why should I send it back just to have him say, okay, I now know it's abuse of discretion, it's over? Well, because from our perspective, there was a clear error of judgment. Well, but just a minute. The clear error, you're suggesting that there is no evidence in this record which would sustain what the District Court did? No, I'm not suggesting that, but the... By then, on an abuse of discretion standard, it seems obvious that the District Court could have made the decision it did without any problem. Okay. As I understood, even in Your Honor's dissent from the Jones case last fall, you explained three ways in which a plaintiff could, or a dismissed party, could overcome abuse of discretion or establish abuse of discretion in the circuit, and one of the ways was through a clear error of judgment, and what I would suggest to this Court is there is nothing, nothing to suggest Mr. Clift did anything underhanded. He may have been naive, he may write in the record which would suggest that he was doing things underhanded. Well, I respectfully disagree. I mean, that's a conclusion that the Court reached. Honestly, if we're on an abuse of discretion standard, just because you disagree isn't enough to get you past it. I understand that, Your Honor. You understand that, okay. I do understand that, but what BNSF has tried to do is paint a picture that this was dishonest. Mr. Clift has gone under oath through deposition and declaration. I guess whether he went under oath or whether he went on deposition or whatever he did, there are facts in the evidence that would suggest that the District Court is right on a discretionary decision. I'd have a tough time overturning him. I would argue the facts that I see. So even if it's an abuse of discretion standard, you would win, rather than summary judgment? Yes. I'm arguing that the Court made an abuse of discretion because there was a clear error in judgment here. There is nothing in the record to suggest this was anything other than an honest mistake, and once the conclusion is reached that an honest mistake was made and not something underhanded or evil, then the case should be reversed and allowed Mr. Clift to pursue his FRSA claim consistent with this circuit's long-standing principle and policy that cases should be decided on the merits. Well, let me ask you this. Supposing that we were to allow him to pursue the claim and the bankruptcy is now dismissed, what's going to happen? I think that's, I mean, the bankruptcy, my guess is, was dismissed because the appeal has been pending for several years. It would be a matter of me contacting the new bankruptcy trustee and reopening it just like we did when we learned about the bankruptcy in the first place. We meaning my firm, Your Honor. I understand. And it was very, very simple. I think as we laid out in the record how willing the bankruptcy trustee was to work with Mr. Clift on a damage share arrangement to open up the bankruptcy court and to proceed, and this was all done before the court ruled. Is the stipulation still in effect or are you going to have to enter into another stipulation? I mean, I don't know the answer to that. I mean, there is an agreement that is in place. There is no expiration date on the agreement. I would imagine the same agreement would still apply. He who entered into the agreement is no more. Right, but it was made on behalf of the bankruptcy trustee for that particular district, Your Honor. I think the agreement would still stand. So if the trustee is not in place, does that mean that another trustee may have to be appointed? I think appointed as I mean, there is a new bankruptcy trustee. As I understand, there is a trustee in place. That is what I understand, although the case has been dismissed. Once again, do you represent Mr. Clift or do you represent the trustee? We represented Mr. Clift and the trustee. If this goes, if if if if we thought that Mr. Clift was not an appropriate plaintiff here and that was only the trustee. Yes. Would you continue to represent him or is that up to the trustee? My I would take the position we continue to represent him, but I don't think it would be in this litigation necessarily. I suppose if he gets deposed, he's the star witness of this case. When we talk about an understandable mistake, are we talking about an understandable mistake on Mr. Clift's part or on the trustee's part? We're talking about an understandable mistake on Mr. Clift's part. But what I would urge this court to consider is how much emphasis is placed on the concept of understandable as opposed to honest. The Esposito case that we cite that this court cited in the Jones case last fall suggests that the comments and the two Supreme Court cases that the comments speak to from 1996 1966, excuse me, about this rule. There was no mention in either of those Supreme Court cases about the concept of understandable, that the focus really should be on whether it was an honest mistake or not. And that's what I'm urging this circuit to consider. The honesty of Mr. Clift. But Dunmore really doesn't talk about honesty anyplace. Dunmore says alleged ratification by the trustee would relate back only if the plaintiff's decision to sue in his known name represented an understandable mistake and not a strategic decision. And there have been cases since then, Your Honor, including the case from last fall, where I understand you were you were a dissenting judge in that case where the reliance on Esposito existed. And if you read Esposito, it talks about not putting too much emphasis on understandable, that the purpose should be honesty. Mr. Clift has gone under oath and testified repeatedly. And I'm sure the court has read the deposition transcript. BNSF asked every which way but Sunday to try to establish some sort of dishonest intent. And they couldn't. So I see I only have about a minute left. So unless the court has any other questions, I'll reserve that time. One question. And that is, it appears from the docket that was filed just last week, bankruptcy docket, that the last entry number 59 discharges, closes the bankruptcy case and discharges the trustee. Now, you say there's another trustee that's been appointed? No, there hasn't been. No, it's closed. It's just the trustee that that I understand was the trustee of record at the time of closure was different than the person with whom our firm entered the agreement with. And it would be a matter of simply contacting that bankruptcy trustee and explaining what had happened. That's speculative on your part, isn't it? Aren't you just speculating when you say that? How do you know that the bankruptcy trustee would be interested at this point? It seems like maybe just based on the docket here that that property, the claim in this case has been abandoned. Well, if it's been abandoned, then Mr. Clift should be able to really not arguing it's abandoned because you have a chapter seven case, right? No, we're not, your honor. We're not. But I do think it's also a product of the length of the appeal. I mean, we, we filed these briefs several years ago and I'm not, I know that the circuit has a ton of cases, but I could, I can see why the bankruptcy court was administratively closed. Having seen the counsel, help me figure this one out. So let me give you, let me just give you a, a, a, a possible solution without committing myself or any of my colleagues to the solution. Let's suppose that I thought that, that, that Mr. Clift was not a proper, um, party here. Okay. Um, that he should, that, that he, um, and let's suppose for purposes of my question that I, uh, that I think that he, maybe he should be a stopped or for some reason again, should not be the plaintiff here. Um, and that the bankruptcy trustee should have been allowed and therefore it was error for the district court to dismiss the case. If we go back and you go to the new, to the new trustee and the new trustee says, I don't really don't have any interest in this case. Why should we do? Well, then the case, it seems to me would be over. It would be over. Yeah. I mean, Your Honor, if you, if the, if the circuit, if, if this panel concludes that Mr. Clift is not a proper plaintiff and should not have been, it was a stopped, I could take the other position, but I understand your question and the trustee decides we're not interested. In light of, there is no case here. In light of a sharing arrangement that you worked out with the prior trustee, does that, does that in and of itself make Mr. Clift a proper party to this? Isn't that just a side? Isn't that just a sidebar? Yes. Arrangement. It can be, it can be changed at any time. Yes. Yes. Because Mr. Clift, we took the position was properly proper plaintiff and that's why he was included, but you're right, Your Honor. Okay. Um, Mr. Morgan, I am going to allow you a minute for, for a rebuttal. Okay. Thank you, Your Honor. Good morning, members of the panel. Suzanne Thomas for BNSF. The court is asking the right questions about whether Mr. Clift had made an inadvertent mistake or, um, failed to, or had difficulty knowing who the proper party in interest should be when he filed this tort claim in district court. So two different standards apply regarding mistakes in district court. The mistake here is, did he have an, um, a difficulty in understanding that the trustee should have been the proper party in interest and was his mistake understandable? Even on a summary judgment standard, there is undisputed evidence that Mr. Clift knew prior to filing the suit in his own name that he had failed to disclose it in bankruptcy and was told by his lawyer that he needed to fix that before filing the suit. So there's no understandable. However, it seems to me that based on the testimony that he's given, one could say on a motion for summary judgment, at least, that there would be disputed facts, which may be the, maybe the court ought to look at again. There is, I mean, if you take the facts as alleged, it doesn't seem to me that one can suggest that there's just uncontroverted fact that would suggest you were entitled to summary judgment. I can understand on a Rule 17 motion where one might get there, but my worry has been that the district court really didn't look at the standard or review for a Rule 17 motion, converted this to a summary judgment, and said there are no disputed facts. If I suggest there are disputed facts, then at that point I've got to reverse that, haven't I? Well, I think the district court looked at this, and when he initially decided to not grant the motion to dismiss, it was because declarations had been filed. So we filed it on the papers under a 12b6 standard. And he allowed discovery. After initially moving, not allowing it, yes, he then allowed it. And at that point we have all the discovery that's in the record. And in order then to really, if I were, if I were to affirm in this particular matter, I'd have to say there are just no facts which would suggest that he could not have understood differently than what he did. At the point of filing the district court action, that's correct. He already knew, he'd been told by his lawyers, and there's no controversy in the record, that he had to fix it. But I understand... We're dealing with a welder, he's a welder, right? Say again, sir? Mr. Clift is a welder? Yes. And he's told to fix it? Yes, and he understood he needed to do something about that by the lawyer who represented him in the OSHA claim before this firm took over. And he does not dispute that he knew that before this case was filed. How long did he delay? He delayed that for more than a year. He knew prior to the filing of this case in December 2013 that he needed to, quote, and then he did not reopen the bankruptcy or seek to reopen the bankruptcy until January 2015. And the trustee then did not enter into a sharing agreement until March 26th of 2015. So there was a very substantial delay. What, what is the, what is the prejudice to your client? The trustee could, if the trustee had properly been apprised during the bankruptcy that this was an asset of the bankruptcy, then it could have engaged in negotiations, for example, with BNSF to try to resolve it then and to preserve... You can still, you could still negotiate, right? Presumably though, if we allowed, if we allowed the trustee to take this forward, you can still negotiate with the, with the trustee, right? You've lost some time, but is there any strategic, is there any strategic problem here? Is there any difference in the kind of case that will be presented by an attorney representing the trustee as opposed to a, an attorney representing Mr. Clift? I believe that the question will become, did the trustee abandon the sharing agreement when the... We'll figure, we'll figure, we'll figure that one out. Let's, let's suppose for right now that the agreement will stand the way it's been negotiated. To me, that seems like a side, that seems like a sidebar arrangement to the question of who's the proper, proper party here. And what I'm trying to figure out is, how is your client prejudiced by this? I mean, your client, assuming that we, I have no idea whether Mr. Clift has a, has a, has a good claim or not, but if we assume that he might, assume that he does, then your client's going to get off here. And I want to know, is there a reason why we ought to enforce these rules strictly because your client has been prejudiced? So how has your client been prejudiced? I don't believe that the prejudice, that prejudice is a standard for the judicial estoppel issue. Okay. You can argue, you can argue the law. I was hoping to get to some facts. So in this case, the agreement became that the creditors would only be entitled to 18%. That's the side, that's the sidebar agreement. How has your client been prejudiced? You, you, you recited to me a whole bunch of delay here between 2013 and 2015. So how is your client prejudiced by the, you know, by the fog of, of figuring out who's the right party here? I, the prejudice falls from first, the delay. Second, the fact that the trustee could have gotten involved earlier and BNSF could have sought a different resolution. And now at this point, it's Mr. Clift who would be rewarded for improperly failing to disclose. And his arguments now about damage to the creditors have become moot and are fiction. So, but as far as prejudice to your client, there's none. As to different result for the payment, but as, as to somebody might get it that isn't normally going to get it, as to you might have been able to negotiate a different thing, yes. But I'm trying to figure out what the prejudice is if we go along Judge Bybee's question. And again, the fact of the delay, the fact that the client, our client was not allowed to have those direct negotiations with the trustee, could not have resolved it earlier, and then it gives a windfall to Mr. Clift to be able to pursue it. We don't really know that it's going to be a wind, windfall for Mr. Clift. The only thing that this case is going to suggest is whether the trustee can step in to where Mr. Clift was and pursue the claim. And if the trustee believes that they can and pursue, and then they'll have the opportunity to do it. I mean, I don't see the trustee, if the trustee closes the estate, the trustee doesn't abandon anything by closing a Chapter 7 estate. The trustee doesn't do anything. The trustee just sits there with whatever, whatever assets they've got that are not distributed at that point. And if they come up with the opportunity to distribute some in the future, they'll come back to life for the benefit of the creditors. So again, I'm not sure there's any prejudice to your client. If that were the standard, I'm just not sure. That's why I'm listening very carefully. And that's, again, why I would say that's not the legal standard. But I understand the standard is that you can pass a Rule 17 argument for abuse of discretion. But in this case, the district court didn't think that. They put it on a summary judgment standard. So in that case, you've got to win by saying there are no disputed facts in this record. And if I don't agree with you, then don't I have to send it back then to let the district court approach it under the direct standard of review? I don't know. The summary judgment standard that the court was looking at was on the motion to dismiss for failure to name the proper party in interest. Which is under Rule 17. Under Rule 17. Which is an abuse of discretion standard. Correct. And so made the factual determination that the court question, it was not understandable for Mr. Clift to fail to name the trustee. And therefore, it is a blur. I would agree with you. There's a blur between what was considered on summary judgment and then what was considered... Well, frankly, I'm not sure I'd agree with you that on summary judgment, the district court could get where they have to go. But I don't find any problem on giving discretion to the judge on an abuse of discretion standard. He can go wherever he has to go. Given my dissents and given all that I've said about this. Let's go to this. You say that the district court did not abuse its discretion on judicial estoppel. Correct? Correct. How can the trustee... How could the judicial estoppel apply to the trustee? It cannot. And we have never argued that. So then, if it can't apply to the trustee, why is judicial estoppel really something that ought to affect us? It applied to Mr. Clift's claim on his own. So he made a number of arguments that he was a proper party in interest. Even if the trustee was the real party in interest, he tried to maintain his ability to pursue the claim by seeking joinder, not substitution of the trustee, and sought to assert the claim in his own right. And therefore, the district court made an alternative ruling as to Mr. Clift and determined that based on judicial estoppel, Mr. Clift could not pursue the claim in his own name. Okay. But if he's seeking joinder, then if you stop Mr. Clift from bringing the suit, wouldn't that leave the trustee standing? If the trustee could properly have been substituted... Well, you used two different phrases. You talked about that you were joining it to Mr. Clift. That gives you two plaintiffs. If one of them is judicially estopped, that still leaves you one, right? Correct. Okay. So what's wrong with that? Had it not been for Rule 17A3 and the failure of relation back, the trustee could have been substituted in. But given the circumstances of the case where it would be futile to allow the trustee to substitute because he could not bring the case forward at that time because of the timing requirements and the administrative process under the OSHA claim, then the trustee was not allowed to go forward because it was futile to try to allow him to join at that point or substitute at that point. Unless he can relate back under Rule 17, he loses on the statute of limitations, right? Yes. And the statute of limitations applies if he's joined, but not if he's substituted? No, it was under both. And so let It's more the statute of duration than the statute of limitations. It's the 15-day rule that required that they give notice of an intent to file de novo in federal district court before the OSHA secretary issued a final order. And there was no doubt that the final order was entered and it's that bar, the final order entry, that would preclude the trustee from going forward whether it was substitution or joinder. So under that, it was futile regardless of whether they sought joinder or substitution. I'm confused. So the trustee is barred no matter whether they're substituted or joined? Correct. Why are we even talking about all the rest of this stuff if they're It's the relation back joinder that requires... And so which rule are we talking about? So under 49 U.S.C. 20109, the court cannot have original jurisdiction for a de novo review of the OSHA matter if a final order has been entered and a proper party has then not brought forward the claim before that entry of the final order by the Department of Labor secretary. And so rule 17 is of no account here under that rule? Rule 17 speaks to that by saying that you can join or substitute or have somebody ratify unless it's futile because the relation back doctrine of 17A3 does not apply. And here the relation back doctrine was found not to be did not have difficulty in naming the trustee as the original party in this case and was not had no understandable mistake. Okay. So 20109 is not an independent reason for knocking this case. That doesn't stand by itself. You have to read it in connection with rule 17. Correct. Okay. All right. I think that's where we started. I'm glad that that's where we ended as well. I was a little confused there. All right. We've taken you well over your time. Ms. Thomas, is there anything else the court needs to know? Simply the fact that it is very speculative to determine what would occur if this matter has to go back to the trustee and, in fact, has this really been abandoned and would Mr. Clift later on. That should be very easy to figure out, shouldn't it? I think that there are complications in this case that would speak to the contrary. Really? Yes. Something that's not in the record before us? There are some cases that, and we have not yet briefed this, but there are cases that suggest that if the trustee does not make an affirmative disclosure at the time of closure that they may want to preserve an asset, that they may not be allowed to go back and reopen and essentially take that asset away from the trustee. And you get to enforce that rule? That would be a rule enforced by the bankruptcy court, right? Correct. Would you have standing in the bankruptcy court to raise that? We would not have direct standing in the bankruptcy court to raise that. So who would raise it? The creditors? Potentially creditors. Why would creditors object to a bankruptcy trustee saying I'm going to try and get you more money? It could be Mr. Clift who would make that objection, quite frankly. Mr. Clift may be out on his ear. But if it has been abandoned to him and the court cannot claw it back, then it becomes, again, a fiction as to whether there's any ability for the trustee to reopen it. Okay. All right. Thank you. Thank you, Your Honors. Mr. Morgan? Very briefly. Thank you. Judge Smith, if we look through the summary judgment lens, then this has to be sent back to the court because there are disputed facts to figure out. And the district court did convert this motion to a summary judgment after... What facts are in dispute that relate to... Is there something more that's going to... There's something more to be discovered? No, except that... Just a matter of witness credibility? That's right. Right. I mean, think about it in the discrimination context. If I'm a plaintiff... Are you contending that as to the question of who is the real party in interest that we would have to have a jury trial? I haven't seen a case that suggests that that's the case. I haven't either. But I don't know if that's not... Is that what you're suggesting? Almost every single case is decided at the motion to dismiss stage, Your Honor. And in this case, the procedure took a significant turn. I'm just saying, if this panel decides to look through the summary judgment lens, it has to. There are disputed facts. There can be no doubt about it. Well, I guess that leads me to my question. I ask you right at first. If the district court's to grant summary judgment to BNSF, it doesn't seem to me that it's going to make too much difference if it gets abuse of discretion. Why am I going to send it back? Well, because it's error. And this panel gets to review summary judgment decisions de novo. And there are clearly disputed facts. That would be the answer, Your Honor. I guess I looked all the way along to try to figure out what happened in this case and whether it's happened in the other case. One starts in this case by saying a Rule 17 is abuse of discretion. So I don't know that there was ever a particular time when summary judgment would have ever been appropriate. So I'm saying to myself, based on the evidence in this case, I'm having a tough time understanding how, on an abuse of discretion standard, the court would be wrong. I understand, Your Honor. I understand. I've answered that question once. If you want me to answer it again, I can. But I view that as more of a hypothetical. The one last thing, I know I'm over time, Your Honor. And I understand, Judge Bybee, you were in the dissent on the Aquin case. But the Aquin case on judicial estoppel with regard to the actual theory looks to the subjective intent of the... Which also in that case was less sympathetic than this one because there the bankruptcy trustee had abandoned any of the claims. And on top of it, Your Honor, it's even worse. The conduct was more egregious in that case, I would argue, simply because the trustee asked her and her husband whether there was a claim. And they disclosed that the husband had a workplace claim. And then when the trustee asked her, she said no. You have it recited verbatim. None of that happened here. And everything was fixed before the decision was even made to dismiss. Unless the court has any other questions, that's all I have. Thank you, Mr. Morgan. Thank you, counsel, for the argument.
judges: Bybee, N.R. Smith, Antoon